Law Offices of Michael A. Haskel
Michael A. Haskel (MH 4680)
Brandon M. Zlotnick (BZ 1146)
Attorney for Plaintiff
167 Willis Avenue
Mineola, NY 11501
(516) 294-0250
haskelesq@aol.com

Kerry Gotlib, Esq. (KG 2254)
Attorney for Plaintiff
80 Fifth Avenue, 12th Floor
New York, NY 10011
(212) 924-1609
gotlaw@aol.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

OSVALDO PATRIZZI,

                                  Plaintiff,

          -against-

BOURNE IN TIME, INC., ANTIQUORUM S.A.,
ANTIQUORUM USA, INC., EVAN ZIMMERMANN,
and WILLIAM ROHR,

                            Defendants.

--------------------------------------------------------------x

Case No. 11 CV 2386 (PGG) ECF CASE
Filed: April 7, 2011

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff, by his attorneys, Law Offices of Michael A. Haskel and Kerry Gotlib, Esq., as

and for his complaint, alleges as follows:

## JURISDICTION

      1.     This action is brought under the Racketeer Influenced and Corrupt Organizations

Act of 1970, 18 U.S.C. §§ 1961 et seq. ("RICO"), the Trademark Act of 1946, as amended, 15

U.S.C. §§ 1051 through 1129 ("Lanham Act"), and the laws of the State of New York.  Plaintiff

seeks to recover damages sustained as a result of the Defendants' conduct, along with cost of this

lawsuit, interest and reasonable attorney's fees.  The Court's jurisdiction is invoked under 28

U.S.C. § 1331 and 18 U.S.C. § 1964(c); pursuant to 28 U.S.C. § 1367 this Court has

supplemental jurisdiction over Plaintiff's state law claims against Defendants because they form

part of the same case or controversy.  Venue is proper in the United States District Court for the

Southern District of New York pursuant to 28 U.S.C. § 1391 insofar as a defendant, WILLIAM

ROHR, resides in this district.

## PARTIES

### (1) Osvaldo Patrizzi

2.      At all times hereinafter mentioned, OSVALDO PATRIZZI ("PATRIZZI" or

"Plaintiff") is a natural person and resides at Les Milefiore, 1 Rue des Genettes, 98000, Monaco.

3.      PATRIZZI is an internationally renowned timepiece expert and auctioneer and his

name has been associated with businesses in New York, New York; Geneva, Switzerland; Milan,

Italy; and Hong Kong, China.  Through these businesses, he has engaged in interstate commerce

and his activities have affected interstate commerce.  He has been involved in international

business transactions that necessitate the exchange of money and information, and has

participated in transactions that have involved the purchasing of products and services from

vendors engaged in international and interstate commerce.  PATRIZZI's personal reputation in

the field of horology currently enables him to engage in the purchase and sale of timepieces in

transactions with private parties and in association with independent auction houses around the

world.

4.      Continuously since long prior to the acts of Defendants alleged herein, PATRIZZI

has been known in this country and around the world as a prominent expert in timepieces and

timepiece auctioneering and as the originator of auctions specifically geared toward the sale of

premium timepieces to timepiece collectors and the general public. PATRIZZI was the creator of the first website for online timepiece auctions, and the first to have developed a system of live interactive online bidding simultaneously with traditional, live auctions. PATRIZZI created the "Grading System," well-recognized in the industry as a reliable tool for evaluating the condition of timepieces.

5.　　PATRIZZI initially established an auction house devoted to timepieces in 1974. He was the founder of ANTIQUORUM S.A. ("ANTIQUORUM-SA") and its subsidiary ANTIQUORUM USA, INC. ("ANTIQUORUM-USA") and served as the president of each until 2007.

6.　　PATRIZZI founded Patrizzi & Co Auctioneers ("Auctioneers") in 2008 and continued his involvement in online timepiece auctioning in his capacity as an executive officer of Auctioneers. On or about February 18, 2008, PATRIZZI allowed Auctioneers to use his name and to register "patrizziauction.com," which is used as a domain name.

7.　　PATRIZZI's name has commercial value and at all times relevant hereto he has had the right to license his name for profit or for personal use. PATRIZZI granted to Auctioneers and its Italy- and Hong Kong-based subsidiaries revocable, non-exclusive permission to use his name.

**(2)　Antiquorum USA, Inc., Antiquorum S.A. and Bourne in Time, Inc.**

8.　　ANTIQUORUM-USA is a corporation organized and existing under the law of New York.

9.　　ANTIQUORUM-SA, which is a corporation organized and existing under the law of Switzerland, is the parent company of ANTIQUORUM-USA.

3

10.     ANTIQUORUM-USA and ANTIQUORUM-SA are engaged in the business of buying and selling high-end timepieces and organizing simultaneous live/online auctions for such merchandise in New York, New York and Geneva, Switzerland, respectively.

11.     ANTIQUORUM-USA and ANTIQUORUM-SA are under common ownership and control and hold themselves out as one company (collectively, ANTIQUORUM-SA and ANTIQUORUM-USA will hereinafter be referred to as "ANTIQUORUM").

12.     BOURNE IN TIME, INC. ("BOURNE") is a corporation organized and existing under the law of New York.  BOURNE is engaged in the business of providing information to consumers regarding high end timepieces and promoting its parent company, ANTIQUORUM.

**(3) Evan Zimmermann and William Rohr**

13.     EVAN ZIMMERMANN ("ZIMMERMANN"), a principal in and the Chief Executive Officer of ANTIQUORUM and principal of BOURNE, is a natural person and resides at 9A Spruce Hill Court, Pleasantville, NY 10507.  Beginning in or about April 2006, ZIMMERMANN has had significant authority to act on behalf of ANTIQUORUM and BOURNE.

14.     WILLIAM ROHR ("ROHR"), a principal in and the Chief Operating Officer of ANTIQUORUM and BOURNE until in or about November 2010, is a natural person and resides at 170 John Street, New York, NY 10038.  Beginning in or about April 2008 until in or about November 2010, ROHR had significant authority to act on behalf of ANTIQUORUM and BOURNE.

15.     ZIMMERMANN and ROHR were the principal decision makers for ANTIQUORUM and acted jointly regarding all matters of ANTIQUORUM.  All decisions made on behalf of ANTIQUORUM were made jointly between ZIMMERMANN and ROHR, such

that the acts of one were the acts of the other.  Which person, between ZIMMERMAN and

ROHR, performed each individual act is within the exclusive knowledge of Defendants.  Since in

or about November 2010, ZIMMERMANN has directed and controlled ANTIQUORUM.

## BACKGROUND

16.     Through his innovations and his creative and bold entrepreneurial initiatives in

the field of timepiece auctioneering, PATRIZZI has been instrumental in enabling Internet users

to participate in auctions all over the world in order to buy and sell high-end timepieces,

including auctions physically occurring in New York State.

17.     PATRIZZI has personally owned the common law trademarks "Osvaldo Patrizzi,"

"Patrizzi & Co Auctioneers," and "patrizziauction.com" (collectively "THE PATRIZZI

MARKS"), which have become associated with Internet timepiece sales and with trading in rare

and expensive timepieces.

18.     Building upon the wide recognition and goodwill PATRIZZI's name has acquired

over the past thirty years, THE PATRIZZI MARKS have been used extensively by businesses in

which PATRIZZI has had an interest, to engage in the timepiece trading and auctioneering, and

THE PATRIZZI MARKS have acquired goodwill and secondary meaning insofar as the public

has come to associate them exclusively with their owner.

19.     Each time a timepiece has been bought or sold through an online auction at

"patrizziauction.com," PATRIZZI, through one or more of the companies with which PATRIZZI

has a business relationship, received a commission on the sale.

20.     THE PATRIZZI MARKS, as well as PATRIZZI's photograph and biography,

have been prominently featured on the Internet, along with distinctive photographs of

PATRIZZI's products, and descriptions of PATRIZZI's prominence in the timepiece auctioneering business.

21.     In or about late October 2010, PATRIZZI discovered that upon entering the domain names "oswaldopatrizzi.com," "patriziauction.com," "patrizziauctioneers.com," or "patrizziauctions.com" (collectively "THE INFRINGING DOMAINS") into the navigation field of an Internet web browser, an Internet user would be directed to a website under the domain name of "timezone.com," which is owned by BOURNE.  Each of THE INFRINGING DOMAINS was a slight misspelling or alteration of PATRIZZI's personal name, or of "patrizziauction.com."  PATRIZZI further discovered that BOURNE's homepage at "timezone.com" listed no fewer than six links to ANTIQUORUM's website, at "antiquorum.com."

22.     No permission had been given to Defendants to use THE PATRIZZI MARKS or to use any web site pages, advertising or Internet code words or titles, or any other promotional materials, whose appearance so resembles said trademarks so as to create a likelihood of confusion, mistake or deception.

### The Internet

23.     The Internet is an international "supernetwork" which is used by millions of individuals, corporations, organizations and institutions.

24.     Users of the Internet can access each other's computers, communicate over the Internet by means of electronic mail ("e-mail"), and have the ability to view and make use of information displayed on accessible sites.

25.     A unique numerical address is assigned to every computer connected to the Internet.  Internet addresses can be located through the use of a Uniform Resource Locator

("URL"). A URL incorporates, *inter alia*, an identified address where resources are available. To illustrate, in "http://105.20.162.5/welcome.html," ("Example") "105.20.162.5" is the address.

26.    Most commercial entities, when registering Internet addresses, as described below (*see* ¶¶ 42-44, 46), adopt "domain names" to promote accessibility by adopting memorable words in place of numerical addresses. In the Example, "105.20.162.5" could be replaced by "patrizziauction.com." (Hereinafter, "patrizziauction.com" shall be referred to as the "PATRIZZI DOMAIN NAME".)

27.    Typically, commercial address registrants create Internet domain names by incorporating their trade names or their trademarks as a prefix followed by the suffix ".com", which identifies the registrant as commercial in nature.

28.    A domain name associated with a particular Internet site, or Web page, is the location from which e-mails can be sent and received, information can be posted, and other services can be offered, *e.g.*, applications to place sales may be filled out. A domain name identifies the source of information and promotes a commercial user's marketing of its goods and services.

29.    To protect the uniqueness of their domain name, those who desire to adopt an address on the Internet list their domain names with a registrar. An Internet online computer address is secured through an application process that involves a written request to the Internet Corporation for Assigned Names and Numbers (hereinafter "ICANN"), which provides support services, including the processing of registration of domain names and their connection to the Internet, upon payment of a fee and the completion of the template application form.

## OVERVIEW OF DEFENDANTS' UNLAWFUL CONDUCT

30.     As will be fully explained below, Defendants have illegally cybersquatted in relation to the PATRIZZI DOMAIN NAME and infringed upon PATRIZZI's common law trademarks.

31.     ZIMMERMANN, ROHR, ANTIQUORUM, and BOURNE registered, or caused the registration of, and ratified the registration of, and knowingly maintained the registration of, THE INFRINGING DOMAINS, which are slightly misspelled, or otherwise confusingly similar, iterations of THE PATRIZZI MARKS (compared in detail with THE INFRINGING DOMAINS, *infra* ¶¶ 42-44), with the bad faith intent to profit by the infringement of THE PATRIZZI MARKS.

32.     Defendants' use of slightly misspelled and confusingly similar iterations of THE PATRIZZI MARKS in conjunction with Defendants' Internet services has been a source of confusion, mistake or deception.  In particular, Defendants intended THE INFRINGING DOMAINS to cause consumers to believe that Defendants' services were authorized, sponsored or otherwise approved by the Plaintiff when in fact they were not.

33.     Any buyers and sellers, who were searching for PATRIZZI on the Internet so as to avail themselves of an organization with which PATRIZZI was associated, or who misspelled or typed variations of THE PATRIZZI MARKS into the navigation field of an Internet web browser were, until on or about March 31, 2011, rerouted to BOURNE's web site, which in turn had links to ANTIQUORUM's website.  As a result of this rerouting, the Plaintiff's rights in THE PATRIZZI MARKS have been continuously diluted, potential commissions to Plaintiff have been diverted, and the goodwill of the Plaintiff has been negatively impacted.

34.     PATRIZZI has been injured by Defendants' unlawful acts within the State of New York and within this judicial district, as well as elsewhere.

35.     Upon information and belief, ANTIQUORUM and BOURNE, through their principals ZIMMERMANN and ROHR, have performed the acts complained of herein willfully and with knowledge of the infringement, and with intent to cause confusion, mistake or deception, and to appropriate and unfairly benefit from THE PATRIZZI MARKS.

36.     The bases of the information and belief referred to in ¶ 35 are that Defendants have known: (a) of PATRIZZI's history and influence in the timepiece collecting and auctioneering industry; (b) that PATRIZZI's name has acquired substantial goodwill in the industry; (c) that Defendants had registered, or caused the registration of, and ratified the registration of, and knowingly maintained the registration of, THE INFRINGING DOMAINS that were slight misspellings of THE PATRIZZI MARKS; (d) that ANTIQUORUM and BOURNE had no permission to utilize THE PATRIZZI MARKS or slight misspellings of them; (e) that PATRIZZI was the founder of ANTIQUORUM and that PATRIZZI's name had been associated with ANTIQUORUM for more than thirty years; and (f) that the registering and linking of THE INFRINGING DOMAINS to ANTIQUORUM's and BOURNE's websites would cause confusion among consumers.  Furthermore, ZIMMERMANN and ROHR directed and controlled ANTIQUORUM and BOURNE and would have been in the unique position to cause BOURNE to register and thereafter to continue to use THE INFRINGING DOMAINS.

## COUNT I

## RICO CLAIMS AGAINST ANTIQUORUM, ZIMMERMANN, AND ROHR FOR VIOLATION OF 18 U.S.C. § 1962(c)

37.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

### (a) The RICO Enterprise

9

38.     BOURNE, a corporation, and therefore one of the forms of organization described in 18 U.S.C. § 1961(4), has been a RICO enterprise engaging in, and the activities of which affect, interstate commerce as heretofore described.

### (b) The RICO Persons

39.     Defendants ANTIQUORUM, ZIMMERMANN, and ROHR, as persons within the meaning of 18 U.S.C. § 1961(3), associated with BOURNE, and conducted and participated, directly and indirectly, in the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

40.     Defendants ANTIQUORUM, ZIMMERMANN, and ROHR, conducted the affairs of BOURNE through a pattern of racketeering activity by virtue of their commission of, and participation in, the unlawful conduct described above in ¶¶ 30-36 and in the wire fraud described below in ¶¶ 41-48. All of the acts of ZIMMERMANN and ROHR described above were committed in their capacity as principals of ANTIQUORUM, within the scope of their authority to direct and control ANTIQUORUM, and therefore were acts of ANTIQUORUM.

### (c) The Predicate Acts of Racketeering

41.     The predicate acts which constituted a pattern of racketeering activity consist of numerous acts of wire fraud, as defined in 18 U.S.C. § 1343, commencing on or about April 8, 2008, during which time Defendants:  registered, or caused the registration of, and ratified the registration of, and knowingly maintained the registration of, THE INFRINGING DOMAINS (as specifically described *infra* ¶¶ 42-44); linked, or caused the linkage of, and ratified the linkage of, and knowingly maintained the linkage of, said domain names to websites owned by Defendants (as described *infra* ¶¶ 47-48) which operated via international and interstate transmission of signals, writings, and pictures over wires that are part of the Internet; and began

directing, or ratifying the direction of, Internet users to Defendants' websites over international and/or interstate Internet wires via THE INFRINGING DOMAINS.

42.     Upon information and belief, on April 8, 2008, ANTIQUORUM, under the direction and control of ZIMMERMANN and ROHR, registered the domain names of "patrizziauctioneers.com" and "patrizziauctions.com" via transmission of domain name application forms and payments, utilizing international or interstate Internet wires for the purpose of executing the fraudulent scheme described in ¶¶ 46-48 *infra*.  These two domain names were slight variations of the PATRIZZI DOMAIN NAME and both included PATRIZZI's last name.

43.     Upon information and belief, on April 9, 2008, ANTIQUORUM, under the direction and control of ZIMMERMANN and ROHR, registered the domain name "patriziauction.com," via transmission of the application form and payment utilizing international or interstate Internet wires for the purpose of executing the fraudulent scheme described in ¶¶ 46-48 *infra*.  This domain name varied from the PATRIZZI DOMAIN NAME, "patrizziauction.com," only by removing one "z" from the PATRIZZI DOMAIN NAME.

44.     Upon information and belief, on April 11, 2008, ANTIQUORUM, under the direction and control of ZIMMERMANN and ROHR, registered the domain name "oswaldopatrizzi.com," via transmission of the application form and payment utilizing international or interstate Internet wires for the purpose of executing the fraudulent scheme described in ¶¶ 46-48 *infra*.  This domain name used PATRIZZI's complete name but with the "v" in "Osvaldo" replaced by a "w," a common misspelling of PATRIZZI's first name.

45.     The basis of the information and belief referred to in ¶¶ 42-44 *supra* is that ANTIQUORUM-SA and BOURNE are corporations formed under the laws of Switzerland and

New York, respectively, and at all relevant times the CEO and Chief Operating Officer of said

companies conducted the companies' business from Switzerland, New York, and other locations.

BOURNE has owned the website "timezone.com" to which THE INFRINGING DOMAINS

were linked from in or about April 2008 until on or about March 31, 2011.  ANTIQUORUM,

which was under the direction and control of ZIMMERMAN and ROHR, is the parent company

of BOURNE.  The registration of THE INFRINGING DOMAINS would have consisted of

multiple transactions utilizing international or interstate Internet wires (described *supra* ¶¶ 42-

44) between, on the one hand, ZIMMERMANN and ROHR, or someone acting on their behalf

or with their knowledge or ultimate approval, and, on the other hand, the Arizona based

company, GoDaddy.com, Inc. ("GoDaddy"), an accredited ICANN registrar (*see supra* ¶ 29).

Registration of THE INFRINGING DOMAINS was effectuated through GoDaddy, which

utilizes an online application process that involves filling out an application form, and

transmitting same with payment or credit information and authorization, via the Internet, to

GoDaddy.

46.     THE INFRINGING DOMAINS mentioned in ¶¶ 42-44 *supra* were specifically

chosen because they included slight misspellings of PATRIZZI's first or last names, or were

confusingly similar to the PATRIZZI DOMAIN NAME, thereby misrepresenting to users of the

Internet that BOURNE and ANTIQUORUM's websites were associated with PATRIZZI.  The

registration of THE INFRINGING DOMAINS was the first part of a scheme, executed through

use of the international or interstate Internet wires, to use the materially misleading

INFRINGING DOMAINS to defraud those searching for a commercial endeavor, involved in

the purchase and sale of timepieces, with which Plaintiff was associated, and to deprive Plaintiff

of the benefit of his reputation and goodwill through the perpetuation of such fraud.

47.     In or about April 2008, in furtherance of this scheme, and subsequent to the registration of THE INFRINGING DOMAINS, ZIMMERMANN and ROHR, using the interstate or international Internet wires, caused THE INFRINGING DOMAINS to become linked to BOURNE's website at "timezone.com," thereby causing any Internet user accessing THE INFRINGING DOMAINS to be unwittingly directed to BOURNE's website.

48.     Upon information and belief, in or about April 2008, ZIMMERMANN and ROHR caused BOURNE's website to include multiple links to ANTIQUORUM's website. Any Internet user anywhere in the world who entered a common misspelling of Plaintiff's name or the PATRIZZI DOMAIN NAME into the navigation field of an Internet web browser would then have been directed over international and interstate Internet wires to BOURNE's site and be linked to ANTIQUORUM's site. Users who bought or sold a timepiece via ANTIQUORUM's site would have paid commissions to ANTIQUORUM. Each time a person intending to purchase or sell a timepiece via PATRIZZI's site was directed by THE INFRINGING DOMAINS to ANTIQUORUM's site and bought or sold the timepiece there instead, ANTIQUORUM received a commission therefor that otherwise would have gone to PATRIZZI.

49.     The basis of the information and belief referred to in ¶ 48 that relates to the participation of ZIMMERMANN and ROHR in the acts of racketeering is that ANTIQUORUM is the parent company of BOURNE. ZIMMERMANN is the CEO of ANTIQUORUM, and ROHR was its Chief Operating Officer until in or about November 2010, and both were principals of ANTIQUORUM and occupied positions that enabled them to direct and control its activities. ZIMMERMANN and ROHR were the decision makers for ANTIQUORUM and BOURNE (*see supra* ¶ 15). As such, they would have been in the unique position to engage and participate in the acts of racketeering described above, would have personally benefited from the

13

commission of such acts of racketeering, and no other person or entity would have had the opportunity, motive or reason to engage in such acts.

50.    Internet users who bought or sold a timepiece via ANTIQUORUM's website after being directed there through the use of THE INFRINGING DOMAINS would have done so in reliance upon the false and misleading suggestion that PATRIZZI was associated with ANTIQUORUM. Such users' reliance was reasonable insofar as, *inter alia*, the name "Osvaldo Patrizzi" had been associated with ANTIQUORUM for approximately thirty years, and most users thus would not have been surprised to find themselves on the ANTIQUORUM website.

51.    Each time an Internet user anywhere in the world entered one of Defendants' web sites through THE INFRINGING DOMAINS, such access was a constituent part of Defendants' continuing acts of wire fraud in furtherance of the Defendants' fraudulent scheme, as such access involved an interstate or international transmission of writings, signs, signals, and pictures that was designed to further the fraudulent scheme and was caused by Defendants' registration and maintenance of THE INFRINGING DOMAINS.

52.    The fraudulent scheme, which purposefully directed users to ANTIQUORUM's site, deprived PATRIZZI of the full benefit derived through the use of THE PATRIZZI MARKS.

### (d) Pattern of Racketeering Activity

53.    The acts of wire fraud hereinabove described were committed in furtherance of a fraudulent scheme, the specific purpose of which was to cause high-end timepiece buyers and sellers, who were searching for PATRIZZI on the Internet so as to avail themselves of an organization with which PATRIZZI was associated, to be redirected instead to the website of ANTIQUORUM. In this manner, Defendants perpetrated a scheme to obtain, through material misrepresentation, business based on PATRIZZI's reputation. The scheme was carried out from

April 2008 and continued from that date until on or about March 31, 2011 and ended only after a demand letter was sent to ZIMMERMAN and ROHR.

54.     The acts hereinabove described were committed so as to constitute a pattern of racketeering activity in that at least two acts of racketeering activity were committed, at least one of which occurred after the effective date of 18 U.S.C. §§ 1961 *et seq.*, and the last of which occurred within ten years of the one immediately preceding it, and such racketeering activities were connected in their nature and purpose to each other and to other acts of racketeering.  The pattern of racketeering activity was open-ended in that it had no predetermined end date, and was continuous in that the scheme was a part of Defendants' regular way of operating or conducting BOURNE's ongoing business and thus there was a threat of continuing and long-term fraudulent conduct, and in fact, such racketeering was perpetrated over a period of three years.  Each and every time an Internet user from anywhere in the world entered Defendants' websites through THE INFRINGING DOMAINS, signals, information, writings, photographs and data was exchanged through use of the international or interstate Internet wires.

### (e) RICO Injury

55.     As a consequence of the aforesaid acts, PATRIZZI suffered a racketeering injury insofar as his property rights in THE PATRIZZI MARKS were diluted and he suffered loss of actual and potential commissions and goodwill.  In addition, PATRIZZI suffered damages because as a material and direct result of the Defendants' racketeering he was deprived of the income he could have received had he licensed the use of his trademarks to a valid licensee, which he had the right to do.

56.     The aforesaid constitutes a violation of 18 U.S.C. § 1962(c) as a result of which PATRIZZI is entitled to treble damages, costs of suit, and attorney's fees.

## COUNT II (IN THE ALTERNATIVE TO COUNT I)

## AGAINST ZIMMERMANN AND ROHR FOR VIOLATION OF 18 U.S.C. § 1962(c)

57.     Plaintiff repeats and reiterates each and every allegation in paragraphs 1 through 56 inclusive, as set forth above, with the same force and effect as though fully set forth herein at length.

58.     ANTIQUORUM, a corporation, and therefore one of the forms of organization described in 18 U.S.C. § 1961(4), has been a RICO enterprise engaging in, and the activities of which affect, interstate commerce, as previously described.

59.     Defendants ZIMMERMANN and ROHR, as RICO persons within the meaning of 18 U.S.C. § 1961(3) employed by or associated with such enterprise, conducted and participated, directly and indirectly, in the affairs of said enterprise through an open-ended and continuous pattern of racketeering activity.

60.     The predicate acts which constitute this pattern of racketeering activity consist of numerous acts of wire fraud, as set forth in Count I of this Complaint.  All of the acts of ZIMMERMANN and ROHR described therein were committed in the scope of their authority to direct and control ANTIQUORUM, and in their capacity as principals of ANTIQUORUM.

61.     The aforesaid constitutes a violation of 18 U.S.C. § 1962(c) as a result of which PATRIZZI is entitled to recover treble damages, costs of suit, and attorney's fees.

## COUNT III

## AGAINST ANTIQUORUM, ZIMMERMANN and ROHR FOR RICO CONSPIRACY IN VIOLATION OF 18 U.S.C. § 1962(d)

62.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 61, inclusive, as set forth above, with the same force and effect as though fully set forth at length.

16

63.    BOURNE is a RICO enterprise engaging in, and the activities of which affect, international and interstate commerce.

64.    Upon information and belief, ZIMMERMANN and ROHR conspired to defraud Plaintiff as follows:

(a)    In or about April 2008, ZIMMERMANN and ROHR agreed that they would register, or cause the registration of, THE INFRINGING DOMAINS and link them to the BOURNE website; and agreed to maintain THE INFRINGING DOMAINS.

(b)    In or about April 2008, ZIMMERMANN and ROHR, acting as principals of ANTIQUORUM, so that their acts are those of ANTIQUORUM, agreed that they would place, or cause the placement of, on BOURNE's website multiple links to ANTIQUORUM's website in order to facilitate the redirection of users in search of the PATRIZZI DOMAIN NAME to ANTIQUORUM's website.

(c)    ZIMMERMANN and ROHR agreed to perpetrate the fraudulent scheme by way of the commission of acts of wire fraud, including those previously set forth in Count I of this Complaint, knowing that the objective of the scheme was to cause high-end timepiece buyers and sellers, who were searching for PATRIZZI on the Internet so that such buyers and sellers could avail themselves of an organization with which PATRIZZI was associated, to be redirected instead to that of Defendants, thereby obtaining, through material misrepresentation, business that would have gone to Plaintiff.

65.     All of the acts of ZIMMERMANN and ROHR described above were committed within the scope of their authority to direct and control ANTIQUORUM, and therefore were acts of ANTIQUORUM.

66.     The acts of racketeering in furtherance of the conspiracy have caused damage to Plaintiff.

67.     The aforesaid constitutes a violation of 18 U.S.C. § 1962(d) insofar as same constitutes a conspiracy to violate 18 U.S.C. § 1962(c), as a result of which PATRIZZI is entitled to treble damages, costs of this suit, and attorney's fees.

## COUNT IV

## AGAINST ALL DEFENDANTS: DILUTION UNDER SECTION 43(c) OF THE LANHAM ACT

68.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 67, inclusive, as set forth above, with the same force and effect as though fully set forth at length.

69.     Defendants' unauthorized use of slightly misspelled, or otherwise confusingly similar iterations of Plaintiff's marks, which apparently stopped on or about March 31, 2011 after PATRIZZI demanded the unauthorized use be discontinued, has diluted the distinctive quality of said marks and diminished the public association of said marks with the Plaintiff in violation of 15 U.S.C. § 1125(c).

70.     The aforesaid constitutes a violation of 15 U.S.C. § 1125(c), as a result of which PATRIZZI is entitled to Defendants' profits, damages, costs of this suit, an accounting of Defendants' profits, and attorney's fees.

## COUNT V

## AGAINST ALL DEFENDANTS FOR CYBERPIRACY UNDER SECTION 43(d) OF THE LANHAM ACT

71.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 70, inclusive, as set forth above, with the same force and effect as though fully set forth at length.

72.     Upon information and belief, ZIMMERMANN and ROHR, acting in their capacity as principals of, and within their capacity to direct and control, ANTIQUORUM and BOURNE, so that their acts were those of ANTIQUORUM and BOURNE, registered, or caused the registration of, and ratified the registration of, and knowingly maintained the registration of, THE INFRINGING DOMAINS, which diluted the famous quality of THE PATRIZZI MARKS in violation of 15 U.S.C. § 1125(d).  The basis for this information and belief is set forth in ¶ 45 above.

73.     Upon information and belief, ZIMMERMANN and ROHR linked, or caused the linkage of, and ratified the linkage of, and knowingly maintained the linkage of, THE INFRINGING DOMAINS with BOURNE and ANTIQUORUM's websites.  The basis for this information and belief is set forth in ¶ 49 above.

74.     Upon information and belief the Defendants' aforesaid acts, which apparently stopped on or about March 31, 2011 after PATRIZZI demanded the unauthorized use be discontinued, were undertaken willfully and with the bad faith intent to profit from Plaintiff's marks.  The basis for this information and belief is set forth in ¶ 36 above.

75.     The aforesaid constitutes a violation of 15 U.S.C. § 1125(d), as a result of which PATRIZZI is entitled to Defendants' profits, damages, costs of this suit, an accounting of Defendants' profits, and attorney's fees.

## COUNT VI

## AGAINST ALL DEFENDANTS FOR FALSE DESIGNATION OF ORIGIN UNDER SECTION 43(a) OF THE LANHAM ACT

76.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 75, inclusive, as set forth above, with the same force and effect as though fully set forth at length.

77.     The aforesaid acts of Defendants likely caused confusion, mistake or deception among consumers in the market of exclusive and rare timepieces as to the source or origin of the services rendered and goods sold by and through Defendants by reason of the fact that buyers and sellers were likely to have believed that Defendants' goods and services originated from, or were in some way properly connected with, approved by, sponsored by, or endorsed by Plaintiff.

78.     The confusion, mistake or deception referred to herein arose out of the aforesaid acts of Defendants, which constituted false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

79.     Upon information and belief, the aforesaid acts, which apparently stopped on or about March 31, 2011 after PATRIZZI demanded the unauthorized use be discontinued, were undertaken willfully and with the intention of causing confusion, mistake or deception.  The basis for this information and belief is set forth in ¶ 36 above.

80.     The aforesaid constitutes a violation of 15 U.S.C. § 1125(a), as a result of which PATRIZZI is entitled to is entitled to Defendants' profits, damages, costs of this suit, an accounting of Defendants' profits, and attorney's fees.

20

## COUNT VII

### AGAINST ALL DEFENDANTS FOR DECEPTIVE BUSINESS PRACTICES UNDER NEW YORK GENERAL BUSINESS LAW § 349

81.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 80, inclusive, as set forth above, with the same force and effect as though fully set forth at length.

82.     The activities of ZIMMERMANN and ROHR, acting in their capacity as principals of ANTIQUORUM and BOURNE, constituted deceptive acts and practices in the conduct of what were, in part, consumer-oriented businesses.

83.     The acts and practices of the Defendants herein alleged are misleading in material respects.

84.     As a consequence of the materially misleading acts or practices of the Defendants, the Plaintiff has been injured.

85.     The Plaintiff is entitled under New York General Business Law § 349 to his actual damages, trebled, to the extent allowed under the law, and his attorney's fees.

## COUNT VIII

### AGAINST ALL DEFENDANTS FOR COMMON LAW TRADEMARK INFRINGEMENT, TRADE NAME INFRINGEMENT, UNFAIR COMPETITION AND DILUTION

86.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 85, inclusive, as set forth above, with the same force and effect as though fully set forth at length.

87.     By their acts alleged herein, Defendants have engaged in trademark infringement, trade name infringement, and unfair competition under the common law of the State of New York.

88.     ZIMMERMANN and ROHR, acting in their capacity as employees and principals of ANTIQUORUM and as principals of BOURNE, have intentionally deceived the public by

registering, causing the registration of, and ratifying the registration of, and knowingly

maintaining the registration of, THE INFRINGING DOMAINS, which incorporate slightly

misspelled, or otherwise confusingly similar iterations of Plaintiff's marks and by

misrepresenting that their goods and services originated from, or were in some way properly

connected with, approved by, sponsored by, or endorsed by Plaintiff.

89.    Upon information and belief the aforesaid acts, which apparently stopped on or

about March 31, 2011 after PATRIZZI demanded the unauthorized use be discontinued, were

undertaken willfully and with the intention of causing confusion, mistake or deception. The

basis of this information and belief is set forth in ¶ 36 above.

90.    As a consequence of this domain name deception, the Plaintiff has been injured in

his trade and has lost an undetermined amount of business and revenue.

91.    Any buyers and sellers who were searching for PATRIZZI on the Internet were

subject to Defendants' deceptive practices directing them away from Plaintiff's website and to

Defendants' websites. The result of this rerouting is that THE PATRIZZI MARKS have been

diluted and the goodwill of the Plaintiff has been negatively impacted.

92.    Plaintiff asks for judgment to recover damages and attorney's fees.

## COUNT IX

### AGAINST ALL DEFENDANTS FOR PERMANENT INJUNCTION

93.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through

92, inclusive, as set forth above, with the same force and effect as though fully set forth at length.

94.    By reason of the acts of Defendants alleged herein, Plaintiff is likely to suffer

irreparable damage, unless said Defendants are permanently restrained from engaging in

wrongful acts in the future.

22

95.    Plaintiff has no adequate remedy at law.

96.    Plaintiff asks for judgment (a) permanently halting the unauthorized usage of THE PATRIZZI MARKS, (b) canceling THE INFRINGING DOMAINS and/or transferring same to Plaintiff, and (c) permanently enjoining Defendants from registering any other domain names that could be found to be confusingly similar iterations of THE PATRIZZI MARKS.

## COUNT X

## AGAINST ALL DEFENDANTS FOR VIOLATING THE NEW YORK STATE CIVIL RIGHTS LAW

97.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 96, inclusive, as set forth above, with the same force and effect as though fully set forth at length.

98.    Defendants violated the New York State Civil Rights Law § 50 *et seq.* by knowingly using PATRIZZI's name, and derivations thereof, for the purposes of advertisement and trade, without having obtained PATRIZZI's prior written consent therefor.

99.    Plaintiff is entitled to damages and a permanent injunction under § 50 *et seq.* of the New York State Civil Rights Law.

## DEMAND FOR JURY TRIAL

100.    Plaintiff demands a trial by jury on all issues so triable herein.

WHEREFORE, Plaintiff, OSVALDO PATRIZZI, demands judgment as follows:

(i)    On Count I against ANTIQUORUM, ZIMMERMAN and ROHR, for violation of 18 U.S.C. § 1962(c):  a money judgment for treble damages, costs of suit, and attorney's fees;

(ii)    On Count II against ZIMMERMAN and ROHR, for violation of 18 U.S.C. § 1962(c):  a money judgment for treble damages, costs of suit, and attorney's fees;

23

(iii)    On Count III against ANTIQUORUM, ZIMMERMAN and ROHR, for RICO conspiracy in violation of 18 U.S.C. § 1962(d):  a money judgment for treble damages, costs of this suit, and attorney's fees;

(iv)    On Count IV against all Defendants for dilution under Section 43(c) of the Lanham Act:  a money judgment for Defendants' profits, damages, costs of this suit, an accounting of Defendants' profits, and attorney's fees;

(v)    On Count V against all Defendants for cyberpiracy under Section 43(d) of the Lanham Act:  a money judgment for Defendants' profits, damages, costs of this suit, an accounting of Defendants' profits, and attorney's fees;

(vi)    On Count VI against all Defendants for false designation of origin under Section 43(a) of the Lanham Act: a money judgment for Defendants' profits, damages, costs of this suit, an accounting of Defendants' profits, and attorney's fees;

(vii)    On Count VII against all Defendants for Deceptive Business Practices under New York General Business Law § 349:  a money judgment for actual damages suffered, trebled to the extent allowed under the law, and attorney's fees;

(viii)    On Count VIII against all Defendants for Common Law Trademark Infringement, Trade Name Infringement, Unfair Competition, and Dilution:  a money judgment for damages suffered, and attorney's fees;

(ix)    On Count IX against all Defendants:  judgment (a) permanently halting the unauthorized usage of THE PATRIZZI MARKS, (b) canceling THE INFRINGING DOMAINS and/or transferring same to Plaintiff, and (c)

24

permanently enjoining Defendants from registering any other domain names that could be found to be confusingly similar iterations of THE PATRIZZI MARKS;

(x)     On Count X against all Defendants for violating the New York State Civil Rights Law § 50 *et seq.*:  damages, and a permanent injunction; together with

(xi)    Punitive damages, interest, costs and disbursements of each enumerated action.

Dated: Mineola, New York
      April 7, 2011

                Yours, etc.,

                LAW OFFICES OF MICHAEL A. HASKEL

                MICHAEL A. HASKEL (MH 4680)
                Attorneys for Plaintiff
                167 Willis Avenue
                Mineola, NY 11501
                (516) 294-0250
                haskelesq@aol.com

                KERRY GOTLIB (KG 2254)
                Attorney for Plaintiff
                80 Fifth Avenue, 12th Floor
                New York, NY 10002
                (212) 924-1609
                gotlaw@aol.com