UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                             :

OSVALDO PATRIZZI,                               :

                                                                             :          11 Civ. 2386 (PAE)
                                  Plaintiff,           :

                                                                             :          <u>OPINION & ORDER</u>

                        -v-                              :

BOURNE IN TIME, INC. et al.,               :

                                 Defendants.     :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Defendants Bourne in Time, Inc. ("Bourne"), Antiquorum S.A., Antiquorum USA, Inc., (together, "Antiquorum"), Evan Zimmerman, and William Rohr (collectively, "defendants") move for judgment on the pleadings on plaintiff Osvaldo Patrizzi's Complaint, which alleges violations under the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and New York statutory and common law, in connection with defendants' use of allegedly infringing internet domain names. For the reasons that follow, defendants' motion is granted with respect to Patrizzi's RICO claim, but denied with respect to his Lanham Act and state law claims.

1

I. Background

    A. Patrizzi's Claims[1]

Patrizzi is a well-known timepiece expert and auctioneer who resides in Monaco. Patrizzi's Complaint claims that, as a result of his expertise and business ventures, he has generated worldwide fame and goodwill in the field of horology (the art of measuring time, including the making of timepieces).

In 1974, Patrizzi established his first auction house for timepieces. He also founded Antiquorum, another auction house and a defendant in this action, and, until 2007, served as its president. Patrizzi created the first website for online timepiece auctions, and developed a system that allows online bidding to occur simultaneously with in-person bidding at such auctions.

In 2008, Patrizzi founded Patrizzi & Co. Auctioneers, another timepiece auction house, which has registered the domain name "patrizziauction.com," and to which Patrizzi has granted revocable, non-exclusive permission to use his name. Patrizzi claims that he owns the common law trademarks "Osvaldo Patrizzi," "Patrizzi & Co. Auctioneers," and "patrizziauction.com," all of which have been used in connection with timepiece businesses in which Patrizzi had or has an interest.

In October 2010, Patrizzi discovered that, upon typing the domain names "oswaldopatrizzi.com," "patriziauction.com," "patrizziauctioneers.com," or "patrizziauctions.com" into the navigation bar of a web browser, one would be redirected to a website, "timezone.com," owned by defendant Bourne. That website contained multiple links

---

[1] The Court's account of the underlying facts in this case is drawn from the Complaint ("Compl.") (Dkt. 1) and, unless otherwise noted, no further citation will be supplied. On a motion for judgment on the pleadings, as in a motion to dismiss, the Court takes all facts pleaded in a complaint as true.

directing users to another site, "antiquorum.com," which belongs to Bourne's parent company, defendant Antiquorum. Patrizzi was alarmed, because he believed these domain names infringed his own common law trademarks, and because, he claims, he had not granted defendants permission to use these allegedly infringing domain names. Bourne, a New York corporation, is in the business of providing information to consumers regarding high-end timepieces. Antiquorum (which consists of Antiquorum S.A., a Swiss corporation, and Antiquorum USA, Inc., a New York corporation) buys and sells high-end timepieces, and organizes live and online auctions for its merchandise. Zimmerman and Rohr were, at all times relevant to this litigation, principals in Bourne and in Antiquorum.

Patrizzi alleges that defendants registered and knowingly maintained these infringing domain names with the bad faith intent to profit by confusing consumers into believing that defendants' business ventures were somehow associated with or endorsed by Patrizzi, and that such confusion has in fact ensued. He claims that defendants were able to capitalize on consumers' confusion because Patrizzi's name has, according to Patrizzi, acquired substantial goodwill and reputational cache in the field of horology. He claims that consumers who typed in any of the allegedly infringing domain names were brought to a site, owned by Bourne, that then directed users to the site for Antiquorum, a company which, like Patrizzi, is in the business of timepieces auctions. He alleges that consumers were thereby deceived into believing they were participating in auctions or otherwise interfacing with a timepiece auction house that had been approved by or was associated with Patrizzi. Patrizzi alleges that, to the extent that any such consumers later participated in an Antiquorum auction, Antiquorum was receiving commissions that otherwise would have gone to Patrizzi. Patrizzi asserts that the allegedly infringing domain

names were registered in April 2008, and that use of the allegedly infringing domain names ceased on March 31, 2011.

### B. Procedural History

On April 7, 2011, Patrizzi filed the Complaint in this action. He brings numerous claims. His federal claims are for civil RICO, in violation of 18 U.S.C. § 1962(c), based on the predicate acts of wire fraud, which are in turn based on the registration and maintenance of the allegedly infringing domain names; RICO conspiracy, in violation of 18 U.S.C. § 1962(d); false designation of origin, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and federal trademark cyberpiracy, in violation of § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). He also brings claims under New York state law for deceptive business practices, common law trademark infringement, trade name infringement, unfair competition, dilution, and violations of state civil rights law. He seeks a permanent injunction, damages, and attorneys' fees.[2]

On May 7, 2012, defendants filed a motion for judgment on the pleadings. Dkt. 22. On May 21, 2012, Patrizzi filed an opposition to that motion. Dkt. 29. On June 15, 2012, defendants filed a reply. Dkt. 33.

## II. Legal Standard on a Motion for Judgment on the Pleadings

The standard for addressing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). To survive a

---

[2] In addition to this litigation, these same parties are actively litigating disputes with each other in New York state court, as well as in courts in Japan, Switzerland, and elsewhere. *See* Defendants' Memorandum of Law in Support of Motion for Judgment on the Pleadings 1–2 (Dkt. 23). According to defendants, this case is part of a larger wave of litigation stemming from a 2005 stock sale and employment transaction in which Patrizzi sold Antiquorum to a third party (the "2005 Antiquorum sale"). *See id.* 19–20.

motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To state a claim for relief that is facially plausible, an allegation must be "more than an unadorned, the-defendant-unlawfully-harmed me accusation"; a claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In making that determination, a court may look to the pleadings as well as to any documents relied upon in the pleadings.  *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  A court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks and citation omitted).  On the other hand, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (noting that a court is "'not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).

In analyzing civil RICO claims, courts are to be mindful of Congress's goal in enacting the statute: "[C]ourts must attempt to achieve results 'consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime.'" *Allen v. New World Coffee, Inc.*, No. 00–cv–2610, 2001 WL 293683, at *3 (S.D.N.Y. Mar. 27, 2001) (quoting *United*

*States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir. 1989)). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Allen*, 2001 WL 293683, at *3 (quoting *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998)). In short, when examining civil RICO claims, "'a court must be mindful of the devastating effect such claims may have on defendants and accordingly, should look with particular scrutiny at these claims to ensure that the RICO statute is used for the purposes intended by Congress.'" *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 299 (S.D.N.Y. 2011) (alterations omitted) (quoting *Purchase Real Estate Grp. Inc. v. Jones*, No. 05-cv-10859, 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010)).

## III. Discussion

### A. Patrizzi's Civil RICO Claims

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To establish a claim for a civil violation of section 1962(c), 'a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994)).

6

Patrizzi alleges that Bourne is a RICO enterprise,[3] in connection with which defendants Antiquorum, Zimmerman, and Rohr engaged in a pattern of racketeering activity. Patrizzi defines the pattern of racketeering as a fraudulent scheme in which defendants registered infringing domain names, which brought users to a site that then linked to Antiquorum's website. Patrizzi alleges that defendants applied for and paid for such domain name registration via the Internet, which defendants employed across state lines and national boundaries. The aim of this allegedly fraudulent scheme was to defraud users who were attempting to participate in the purchase or sale of a timepiece through a venture which Patrizzi participated in or endorsed, and to "obtain, through material misrepresentation, business" for Antiquorum by "depriv[ing] Patrizzi of the benefit of his reputation and goodwill." Patrizzi casts this conduct as wire fraud, in violation of 18 U.S.C. § 1343. Patrizzi alleges that the conduct spanned a period of 2 years and 11 months—between April 2008, when the allegedly infringing domain names were registered, and March 2011, when they were taken down.

Patrizzi's RICO and RICO conspiracy claims must be dismissed, for two independent reasons. First, Patrizzi fails to sufficiently allege continuity, a necessary ingredient of the RICO pattern requirement. Second, Patrizzi's allegations of wire fraud are, at their core, garden variety trademark infringement claims.

### 1. *The "Continuity" Requirement for a Pattern of Racketeering Activity*

A "pattern of racketeering activity" includes "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). These predicate acts, the Supreme Court has held,

---

[3] Under RICO, an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

must be related and continuous. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. A complaint that properly alleges either a closed- or open-ended pattern satisfies the continuity requirement of the pattern element. *See Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11-cv-7801, 2012 WL 1231775, at *7 (S.D.N.Y. Apr. 12, 2012) (citing *First Capital Asset Mgmt. v. Satinwood*, 385 F.3d 159, 181 (2d Cir. 2004)).

Patrizzi's Complaint vacillates as to whether defendants' alleged pattern of racketeering activity was closed- or open-ended. On the one hand, the Complaint states, conclusorily, that "[t]he pattern of racketeering activity was open-ended," Compl. ¶ 54; on the other hand, in setting out the facts, the Complaint alleges that defendants ceased using the domain names on March 31, 2011, *id.* ¶ 45. Notably, Patrizzi offers no specific allegations in support of his conclusory claim that the scheme is "open-ended." *See Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 257 n.30 (S.D.N.Y. 2002) ("A simple statement that the 'scheme continues to date,' without more, does not suffice [to allege open-ended continuity]."). Patrizzi's alleged RICO injuries are dilution of his mark, the loss of actual and potential commissions and goodwill, and the deprivation of income he could have received from licensing his trademarks. Each of the wrongful actions from which these alleged injuries arose ceased on March 31, 2011, when use of the allegedly infringing domain names ceased. There is, thus, no basis for Patrizzi's claim that defendants engaged in an open-ended pattern of racketeering activity, beside the Complaint's *ipse dixit* that this is so.

In any event, whether the alleged pattern of racketeering activity is analyzed as a closed- or open-ended scheme, Patrizzi fails to satisfy the required continuity element of a RICO claim,

because the scheme he alleges is too narrow, and the victims too few, to constitute a continuous pattern. "Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity." *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 624–25 (S.D.N.Y. 2006) (internal quotation marks omitted); *see also Medinol Ltd. v. Bos. Scientific Corp.*, 346 F. Supp. 2d 575, 616 (S.D.N.Y. 2004) (scheme with three participants, one purpose, and one victim too narrow to be a pattern of racketeering activity); *Lefkowitz v. Bank of N.Y.*, No. 01-cv-6252, 2003 WL 22480049, at *9 (S.D.N.Y. Oct. 31, 2003) (RICO claim insufficient because allegations amounted to nothing more than that "a small number of parties engaged in activities with a narrow purpose directed at a single or at most three victims"); *Weizmann Inst. of Sci.*, 229 F. Supp. 2d at 256–57 (allegations insufficient to support continuity when they consisted of four predicate acts committed by one participant against a small number of victims in furtherance of a single fraudulent scheme).

Here, there is only one clear victim of the alleged scheme: Patrizzi himself. And there is only one narrow purpose alleged: to rip off Patrizzi, by trading, allegedly improperly, on the goodwill his name carries in the field of horology. Patrizzi alleges that only three entities (and closely related ones, at that), were involved in the scheme, and he offers no specific allegations of the roles of the specific perpetrators. The circle of involvement and the purported goal of the alleged scheme are simply too narrow to satisfy the RICO requirement of a continuous pattern.

### 2. *Patrizzi's Wire Fraud Claims*

Patrizzi's RICO claims are deficient for a separate reason. Patrizzi alleges that his business suffered—both in dilution of his brand name and in reduced income—because his potential customers were directed to Antiquorum's website, in reliance on defendants' false

9

claims (made via the allegedly infringing domain names) of association with Patrizzi. This allegation "boils down to a claim of willful trademark infringement—not racketeering," and, in fact, Patrizzi brings discrete trademark infringement claims. *Evercrete Corp.*, 429 F. Supp. 2d at 630 (collecting cases dismissing RICO claims where they amounted to nothing more than dressed-up intellectual property claims). But it is well-settled that a "garden variety fraud or breach of contract case[]" cannot be "transform[ed] into a vehicle for treble damages" by simply alleging the use of interstate mail, wires, or, as is the case here, the Internet. *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000). "All businesses use interstate mail or wires. Congress did not intend that every trademark dispute would be brought under RICO." *Evercrete Corp.*, 429 F. Supp. 2d at 631.

Here, Patrizzi alleges the identical underlying activity in support of both his RICO claims and his federal trademark infringement claims: the unauthorized use of slightly misspelled domain names intended to confuse potential customers. Without the trademark infringement allegations, none of the other activity defendants engaged in could be considered fraudulent or could otherwise give rise to civil liability. *See Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996) (RICO claims properly dismissed where they were nothing more than "reformulated copyright infringement claims").

Both because Patrizzi fails to sufficiently allege continuity to support a pattern of racketeering activity, and because the RICO violations he alleges amount to garden variety trademark infringement claims, Counts One and Two of the Complaint are dismissed.

### 3. *RICO Conspiracy*

Because the Court finds that Patrizzi does not sufficiently allege his substantive RICO claims, Patrizzi's RICO conspiracy claim pursuant to § 1962(d) necessarily fails. "[A] complaint

must adequately state a claim under § 1962(a), (b), or (c) in order for the Court to find a violation of § 1962(d)." *Woods v. Mercier*, No. 11-cv-6502, 2012 WL 3925852, at *7 (W.D.N.Y. Sept. 7, 2012) (citing *First Capital Asset Mgmt*, 385 F.3d at 164). Accordingly, Count Three of the Complaint is dismissed.

### B. Patrizzi's Lanham Act Claims

Patrizzi also brings federal trademark claims under the Lanham Act: under § 43(a) for false designation of origin, § 43(c) for dilution, and § 43(d) for cyberpiracy. In his Complaint, Patrizzi alleges that he owns the common law trademarks "Osvaldo Patrizzi," "Patrizzi & Co. Auctioneers," and "patrizziauction.com." Patrizzi seeks damages based on defendants' use in commerce of the domain names that allegedly infringe on these marks.

#### 1. *False Designation of Origin*

Patrizzi alleges that defendants misappropriated the goodwill associated with the Patrizzi name by using, without permission, slightly misspelled versions of his marks to funnel confused customers to Antiquorum's website.

Section 43(a) of the Lanham Act prohibits a person from using "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, . . . or to deceive as to the . . . origin, sponsorship, or approval of his or her goods. . . ." 15 U.S.C. § 1125(a)(1); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114–16 (2d Cir. 2006). A plaintiff must first demonstrate his own right to use the mark in question to be entitled to relief. *See Study Logic, LLC v. Clear Net Plus, Inc.*, No. 11-cv-4343, 2012 WL 4329349, at *6 (E.D.N.Y. Sept. 21, 2012) (citing *ITC Ltd. v. Punchgini*, 482 F.3d 135, 154 (2d Cir. 2007).

In moving to dismiss, defendants argue that Patrizzi cannot demonstrate his own right to use the trademarks he asserts in the Complaint, both because (1) Patrizzi is not, in fact, the registered owner of any domain names incorporating such trademarks (rather, someone named Leo Verhoeven is); and (2) any goodwill such trademarks have accrued over the course of Patrizzi's horology career were sold by him as part of the 2005 Antiquorum sale.[4]  To be sure, the documentation defendants provide as part of their briefing on this motion is impressive and lends substantial credence to their arguments.  On a motion for judgment on the pleadings, however, the Court is obliged to credit Patrizzi's allegation in the Complaint that he "has personally owned" the trademarks he asserts, and that the infringing domain names "so resemble[] said trademarks so as to create a likelihood of confusion, mistake or deception."  Thus, although Patrizzi may ultimately prove unable to support his assertions of trademark ownership, at this stage, the allegations in the Complaint must be taken as true, and Count Six of the Complaint, for violations of § 43(a) of the Lanham Act, survives defendants' motion.

   2.  *Trademark Dilution*

Patrizzi also alleges that defendants diluted by tarnishment his marks, which he claims denote quality in the world of horology.  He claims defendants did so in connection with the unauthorized use of the allegedly infringing domain names that led customers to Antiquorum's site.

---

[4] Defendants also argue that Patrizzi fails to allege that either the allegedly infringing domain names or the site "timezone.com" offered goods or services, and thus Patrizzi does not sufficiently allege a violation of § 43(a), which requires the use of a trademark "in connection with any goods or services."  25 U.S.C. § 1125(a)(1).  However, because Patrizzi explicitly alleges that defendants' actions likely confused customers "as to the source or origin of the services rendered and goods sold by and through defendants," Compl. ¶ 77, dismissal on the pleadings is not appropriate.

12

Section 43(c) of the Lanham Act provides that "the owner of a famous mark that is distinctive . . . shall be entitled to an injunction against another person who . . . commences use of a mark . . . in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1).[5] The Lanham Act also allows the owner of the famous mark to be awarded monetary damages, attorneys' fees, and costs under 15 U.S.C. § 1117(a), if (1) the mark that is likely to cause dilution by blurring or tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006, and (2) the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark or willfully intended to harm the reputation of the famous mark. 15 U.S.C. § 1125(c)(5).

Defendants make the same argument as to Patrizzi's § 43(c) claim as they did for his § 43(a) claim: The law protects only *owners* of a trademark, and, defendants assert, Patrizzi does not own any of the trademarks which defendants allegedly infringed. Again, although there is ample documentary evidence appearing to undermine his claim, Patrizzi has sufficiently alleged, for the time being, that he owned such trademarks, and that defendants' infringing domain names "diluted the distinctive quality of said marks." Accordingly, the motion to dismiss Count Four of the Complaint, for violations of § 43(c) of the Lanham Act, must be denied.

### 3. *Cyberpiracy*

Finally, Patrizzi alleges that defendants engaged in "cybersquatting" when they registered, caused to be registered, or approved the registration of domain names that were confusingly similar to Patrizzi's marks.

---

[5] Patrizzi does not explicitly seek an injunction under the Lanham Act, but the Court construes his Complaint to do so, as he elsewhere seeks an injunction under state law.

Under the relevant provisions of § 43(d), "a person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person" (1) "has a bad faith intent to profit from that mark," and (2) "registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A). Section 43(d) of the Lanham Act was enacted "to prevent cybersquatting, an expression that has come to mean the bad faith and abusive registration and use of the distinctive trademarks of others as internet domain names, with the intent to profit from the goodwill associated with those trademarks." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 323–24 (S.D.N.Y. 2010).

With respect to his claim of cyberpiracy by the defendants, Patrizzi must sufficiently allege that: (1) the marks were distinctive or famous at the time the domain names were registered; (2) the infringing domain names are identical to or confusingly similar to plaintiff's marks; and (3) defendants had a bad faith intent to profit from the marks. 15 U.S.C. § 1125(d)(1); *see also Study Logic*, 2012 WL 4329349, at *9.

Defendants repeat their same arguments that this claim should be dismissed based on Patrizzi's asserted lack of ownership. For the reasons stated above, these arguments cannot carry the day at this phase. The motion to dismiss Count Five of the Complaint, for violations of § 43(d) of the Lanham Act, is, therefore, denied.

    4.  *Expedited Discovery on Issue of Ownership*

In the interest of efficiency, and in the hope of saving the parties time and money in at least one corner of their long-standing dispute of international dimension, the Court has concluded that it would be productive for the parties to expedite discovery on these discrete questions: (1) whether Patrizzi or another individual is the "owner" of the asserted trademarks,

and (2) what effect, if any, the 2005 Antiquorum sale had on such ownership.  Based on the Court's review of the motion to dismiss, it appears possible that expediting resolution of this issue will expedite resolution of Patrizzi's various Lanham Act claims.

### C. Patrizzi's State Law Claims

In their briefs, the parties do not address the merits of Patrizzi's various state law claims.  They focus instead on whether the Court should exercise supplemental jurisdiction over these claims in the event that all of Patrizzi's federal claims are dismissed.  Because the Court has sustained the Lanham Act claims, there is no occasion at this time to consider dismissing the state law claims on that basis.  In the event that the Lanham Act claims are eliminated at summary judgment, the Court will then consider whether to exercise supplemental jurisdiction over the state law claims.  The motion to dismiss Counts Seven through Ten is, therefore, denied.[6]

---

[6] Patrizzi's argument that diversity jurisdiction is present in this case—and would require the Court to retain jurisdiction over the state claims in the event the Lanham Act claims are dismissed—is specious.  It is long settled that diversity jurisdiction is lacking in cases with foreign and domestic parties on one side, and only a foreign party on the other.  *See, e.g.*, *Growth Fund v. Morgan Stanley & Co. Int'l*, No. 97-cv-2583, 1998 WL 375201, at *2 (S.D.N.Y. July 2, 1998) (collecting cases).  This result flows logically from the well-known rules that diversity jurisdiction (1) requires complete diversity, and (2) is absent when all parties are aliens.  *See id*.  Here, Patrizzi, the sole plaintiff, is a domicile of Monaco, whereas defendant Antiquorum S.A. is a domicile of Switzerland, and all remaining defendants are New York-domiciled.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings is granted with respect to plaintiff's RICO and RICO conspiracy claims (Counts One through Three), but denied as to plaintiff's Lanham Act and state law claims (Counts Four through Ten).

A pretrial conference in this case is scheduled for October 25, 2012, at 10:00 a.m. The Court intends to use this conference to discuss and facilitate expedited discovery on the question of ownership of the trademarks Patrizzi recites in his Complaint. Counsel should come to the conference prepared to (1) provide fulsome answers to the Court's questions regarding these trademarks and the 2005 Antiquorum sale, and (2) set an expedited schedule for discovery on these issues. The Court will reserve judgment on the pending discovery disputes until after such discovery. Patrizzi's motion to compel the production of documents (Dkt. 57) is denied without prejudice to renewal at a later date.

The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 22 and 57.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: October 11, 2012
       New York, New York