UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------X

OSVALDO PATRIZZI,                                         : Docket No. 11-CV-2386 (PAE)

                             Plaintiff,                : DECLARATION IN
                                                      SUPPORT OF MOTION
               - against -                                        : FOR SANCTIONS

BOURNE IN TIME, INC., ANTIQUORUM S.A.,                    :
ANTIQUORUM USA, INC., EVAN ZIMMERMANN,
and WILLIAM ROHR,                                         :

                               Defendant,               :

---------------------------------------------X

        **JASON CANALES**, an attorney duly admitted to practice law in the United States District Court for the Southern District of New York, hereby declares under the penalty of perjury that the foregoing is true and correct:

        1.  I am counsel to the Defendants in the within action and, as such, am fully familiar with all of the facts and circumstances as are hereinafter set forth.

        2.  This declaration is submitted in support of Defendants' motion for sanctions against Plaintiffs' counsel pursuant to Fed. R. Civ. P. Rule 11(c) (2).  This sanctions request results from the commencement and maintenance of the instant action against the Defendants.  Specifically, Plaintiff's assertion of RICO claims against Defendants in this action has no basis in law because, among other things, the conduct alleged, as a matter of law, does not constitute a "pattern of racketeering activity" because it allegedly involves only a single victim, was engaged in over a short period of time, and was terminated prior to the commencement of this action.

        3.  On May 7, 2012, I personally gave Plaintiff's counsel the twenty-one day "Safe Harbor" notice required by Fed. R. Civ. P. Rule 11(c) (2), and served (but did not file) a Rule 11

motion.  A copy of my Safe Harbor letter, together with the proposed Rule 11 motion that was served on counsel is annexed hereto as Exhibit "1".  Plaintiff did not withdrawn any of the RICO claims in the Complaint in this case prior to the expiration of the Safe Harbor period, nor have his counsel to date.

4.  On May 7, 2012, Defendants moved for Judgment on the pleadings in favor of Defendants on Plaintiffs' RICO claims on the grounds enunciated above (and as set forth in the Safe Harbor Notice).  In Defendants' moving Memorandum of Law, it was established that the law is clear as to the invalidity of Plaintiff's RICO claims.  Notwithstanding that, Plaintiff did not withdraw any of its RICO claims after Defendants' Memorandum was served.

5.  Instead, on May 21, 2012, Plaintiff's counsel, Michael A. Haskel, Esq. and Kerry Gotlib, Esq., filed a memorandum of law, taking the frivolous positions (among others) that (i) Plaintiff had adequately pled a pattern of racketeering activity, and (ii) alleged "wire fraud" that constituted a purported trademark infringement is actionable under RICO.

6.  On June 15, 2012, Defendants filed a Reply Memorandum of Law, establishing that the positions taken by Plaintiff's counsel in their "opposition" memorandum were frivolous, legally untenable, and unsupported by law.  With respect to Plaintiff's "argument" that "the predicate acts alleged … are ones of wire fraud, not of trademark infringement or false designation of origin," the Reply Memorandum established that that very argument had been rejected in prior judicial determinations on almost identical facts.  With respect to Plaintiff's "argument" that a pattern of racketeering activity existed, the Reply Memorandum established that neither open-ended nor closed-ended continuity existed because "Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed toward a single victim do not satisfy the RICO requirements of a closed or open pattern

of continuity." *Evercrete Corp. v. H-Cap Ltd.*, 429 F.Supp.2d 612 (S.D.N.Y. 2006), quoting *Lefkowitz v. Bank of N.Y.*, 2003 W: 22480049, at *8 (S.D.N.Y. Oct. 31, 2003).

7.  Notwithstanding the overwhelming authority cited in the Moving Memorandum and the Reply Memorandum, Plaintiff's counsel refused to withdraw the RICO claims and, instead, allowed this Court to make a ruling on Defendants' motion for judgment on the Pleadings.

8.  On October 11, 2012, this Court issued an Opinion & Order (Docket Entry No. 61) which, *inter alia*, dismissed Plaintiff's RICO claims with prejudice in their entirety, precisely on the grounds set forth in my prior Safe Harbor Notice to Plaintiff's counsel. In the Opinion & Order, this Court determined, with respect to the continuity issue, that [Opinion & Order, p. 8-9]:

> There is, thus, no basis for Patrizzi's claim that the defendants engaged in an open-ended pattern of racketeering activity, beside the Complaint's *ipse dixit* that this is so.
>
> In any event, whether the alleged pattern of racketeering activity is analyzed as a closed- or open-ended scheme, Patrizzi fails to satisfy the required continuity element of a RICO claim, because the scheme he alleges is too narrow, and the victims too few, to constitute a continuous pattern.

9.  In so ruling, this Court cited the *exact* authority that was brought to the attention of Plaintiff's counsel in the Defendants' Moving Memorandum and Reply Memorandum. Similarly, in rejecting Plaintiff's argument that alleged "wire fraud" which allegedly resulted in a purported trademark infringement is actionable under RICO, this Court ruled that "this allegation 'boils down to a claim of willful trademark infringement – not racketeering,' and, in fact, Patrizzi brings discrete trademark infringement claims." [Opinion and Order, p. 10].

10. In short, this Court ruled that "both because Patrizzi fails to sufficiently allege continuity to support a pattern of racketeering activity, and because the RICO violations he

alleges amount to garden variety trademark infringement claims, Counts One and Two of the Complaint [the RICO claims] are dismissed."

11.  There is, it is respectfully submitted, no good faith basis upon which Plaintiff's counsel could have reasonably believed that the RICO claims in the Complaint at bar were supportable as a matter of law.  Even in the unlikely event that counsel so believed *ab initio*, the authority provided to counsel with my prior Safe Harbor Notice should have alerted them to the fact that the RICO claims were legally deficient.  Moreover, the authority and arguments presented in Defendants' Moving Memorandum of May 7, 2012 (which Plaintiff's counsel, for the most part, simply ignored), and their Reply Memorandum of June 15, 2012, clearly placed Plaintiff and his counsel on notice as to the legal frivolity of their RICO claims.  Nonetheless, they refused to withdraw those claims.

12.  Rule 11 provides that sanctions are awardable unless "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Here, there is no reasonable manner in which Plaintiff's counsel could have believed that the RICO claims asserted in the Complaint were warranted by existing law, nor did they even attempt to make any argument for reversing or modifying existing law or establishing new law.

13.  Moreover, Rule 11 provides for sanctions where a claim is "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Here, the evidence supports the conclusion that that was the true motivation in including frivolous RICO claims in a garden variety trademark infringement case.  Immediately upon the commencement of this action, Plaintiff issued a public release via the internet that read as follows:

4

> It is this anti-mafia law, RICO (Racketeer Influenced and Corrupt Organization Act) that our lawyer is using in his recently filed complaint against EZ [Evan Zimmermann] and William Rohr. Created in the 1970s, this law defends businesses from mafia attacks on name similarity that misdirects customers of successful businesses to similar looking or sounding business managed by the mafia. This seems to fit, in more ways than one!

14.   This (historically erroneous) public statement by Plaintiff makes is abundantly clear, it is respectfully submitted, that Plaintiff used the commencement of this action to enable him to publicly imply that the individual Defendants were part of the "mafia," and that Antiquorum was a "business managed by the mafia." Plaintiff, who was then a competitor of the Defendants, consequently appears to have used this lawsuit as a competitive tool.

15.   Additionally, as is also pointed out in the Defendants' Memorandum of Law, numerous other proceedings among the parties, in several different tribunals and several different countries (including the U.S.), were pending at the time that the instant action was commenced. Those actions included civil and criminal proceedings against Plaintiff and his associates (which are still pending) alleging the theft of millions of dollars of funds and inventory. The assertion of outrageous and frivolous RICO claims by the Plaintiff in the matter at bar appears to have also been motivated by a desire to place pressure on the Defendants to compromise or withdraw those other actions.[1]

---

[1] Similarly, just last week Plaintiff released highlighted portions of a transcript of one of the oral arguments before the New York State Court to a friend of his that publishes an on-line "magazine." The selective and incomplete citations to the transcript in that case, and the misleading statements in that "article," made it appear as if the New York State Court had made rulings adverse to Mr. Zimmermann and Antiquorum when, in fact, the New York State Court not only denied *each and every one* of Mr. Patrizzi's substantive motions in that case (including motions for injunctive relief and summary judgment), but also directed that Mr. Patrizzi post $75,000 security with the court to cover any eventual costs award issued against him. While Mr. Patrizzi's "leak" to the "press" in the New York State case is not itself a determinative factor with respect to this Rule 11 motion, it is at least anecdotal evidence of the continued use by Plaintiff of judicial proceedings to attempt to defame Antiquorum and its principals -- including not-so-oblique allusions to racketeering -- with impunity while under the perceived protection of "judicial immunity."

16. For those reasons, it is respectfully submitted that this Court should issue a monetary sanctions award against Plaintiff and his counsel, which should include reimbursement to Defendants of their reasonable legal fees incurred in this action to date. Upon request by the Court, we would segregate and submit to the Court our firm's billing charges relevant to only this case.

**WHEREFORE**, it is respectfully requested that this Court issue an award of monetary sanctions against Plaintiff's counsel in such amount as the Court deems appropriate, but in at least an amount equivalent to the legal fees incurred by Defendants in this case to date, together with the costs (including legal fees) of the instant motion, and such other, further and different relief as to the Court may seem just and appropriate.

Dated:  New York, New York
        October 16, 2012

                                                    JASON CANALES